and Tandrea Milton. Stephen John Petrani is here for the appellants Florence and Milton. Zach Greenemeier is here for Gervin. And Matthew Cavadon is here for the Amicus Cato Institute. And Mr. Petrani, you may begin when you're ready. I'm actually Paul Draper, sir. You're Mr. Draper? Yeah. Paul. Okay. Thank you, Your Honor. Mr. Gervin's Fourth Amendment malicious prosecution claim fails for two reasons. First, on the merits. Even if we assume that the warranted issue here lacked the kind of probable cause required by the Fourth Amendment, Mr. Gervin loses for the independent reason that he cannot prove the elements of a malicious prosecution tort. Malicious prosecution requires a criminal prosecution, and Florence and Milton did not try to prosecute Gervin. They simply tried to revoke his probation, which is a non-criminal supervisory process. That results in a seizure, which is what the Fourth Amendment speaks to. The result of the seizure, the important thing to understand, Your Honor, is that the seizure there, probation is not, is already part of a criminal sentence. And so any punishment that he could receive for violating his probation is just an adjustment to the sentence he's already serving, as a result of having been convicted for a crime, in this case for attempted burglary. So, for example, if they did revoke his probation here, he couldn't be put back in prison for any longer than his original sentence would have been. You know, at the time the revocation hearing happened here in 2019, he only had just a few more years left in his sentence. He could only go back in for that amount of time. So any punishment he received as a result of his probation being revoked would just ultimately be an adjustment to the sentence that he's already serving as a result of having been convicted for a crime. Right, but the problem here is that his probation should have never been provoked, revoked, and the only reason why it was is because the probation officers outright lied. I'm not sure the evidence is clear that they outright lied, Your Honor. They said they read the sentencing order carefully, but the sentencing order clearly did not support the revocation. So either they're illiterate and lied about reading it, or they read it and lied about what it said. Either scenario, it's a false statement that resulted in this man spending 104 days in jail unnecessarily. Well, just to address the facts for a second, I think what the evidence does indicate is that the officers were very confused about the situation. I think it's clear that what is clear is his probation should not have been revoked. It was a meritless attempt to revoke his probation. That much is true. It's not clear that they intentionally lied, and I think good evidence for that, and good evidence for why the probation case is that in the vast majority of probation cases, probationers are required to fulfill these general conditions like reporting in. And the officers here did make the mistake of not checking his specific conditions in detail to ensure that he had to follow those conditions, and that was incorrect. They should have checked, but they made a mistake by not checking when they did. But I thought the record is that they represented to the court that they did check, that they read the sentencing order. If you look at the deposition transcript, they say a couple of things, but it was nearly a decade, I think, that they were doing the depositions after they filed the initial arrest warrant. I think they say that they expect they would have looked at the conditions. They say they didn't have access to the transcript from the hearing. They say that they thought he should have reported in. But I think this is all ultimately beside the point, Your Honor, because even if we're not arguing that the attempt to revoke his probation was correct, or that it had probable cause, what we're arguing is that regardless of whether there was probable cause, regardless of whether it had the probable cause required by the Fourth Amendment, he loses because it wasn't a criminal prosecution. That can't be right. I mean, if you were right about that, then any time anybody is on probation, you could just revoke their probation for no reason at all and put them in jail. I mean, that's what you're saying. I don't think so, Your Honor. I think it's important to understand that in a 1983 claim for damages, there's two parts to the plaintiff's case. So he has to prove, and this Court and the Supreme Court have been consistent on that. He has to prove both the Fourth Amendment violation and he has to prove the malicious prosecution tort. Even if he does prove the Fourth Amendment violation here, which I think you could say maybe he proved that just by showing that the warrant lacked probable cause, in order to recover damages, he still has to prove the malicious prosecution tort. And on the merits, that's what we're arguing. He may have some other kind of relief that's not damages. So, for example, if he is seized and isn't giving a hearing to test the probable cause of his seizure, perhaps he could pursue a habeas rate. And on that claim, he would just have to prove, I think, the Fourth Amendment violation. He wouldn't have to prove the malicious prosecution tort elements because he's not pursuing damages. But the fact that he can show a Fourth Amendment violation does not mean automatically that he can prove the malicious prosecution tort elements, which is what he needs to prove to recover damages. Well, that could be pretty time-consuming, though. He might still spend 104 days wrongfully in jail. He's got other remedies. I think you're right about that. He could pursue habeas corpus, 14th Amendment due process, 1983 claim based on false imprisonment. But it takes time. Yes, he does. I should note, again, the other thing to note on the facts is that a big chunk, it's not exactly clear how long from the record. And I mean, perhaps they did find it in the record. It's not exactly clear how long, but a big chunk of that 104 days was because he was in North Carolina and had to be extradited back to Georgia. And it appears that after he was extradited back to Georgia, the process after that happened pretty quickly with the revocation petition and the hearing. But I acknowledge that's a long time. And I think all of this, you know, as Your Honor pointed out, he could pursue maybe a habeas petition. Maybe he has other claims available to him. This is good evidence that, you know, probationers who are seized without probable cause are not just left in the lurch. They do have all these other avenues available to them. And, yes, it takes time. But, you know, any kind of wrongful seizure takes time to test. You know, if somebody had a warrant issued without probable cause for their arrest on criminal charges, it might take time for them to pursue a habeas writ to get out. And then, you know, it might take time on the back end because they could pursue damages. It might take time for them to file that. So I still don't understand your argument about why this doesn't, why he hasn't arguably alleged enough to get by the common law aspect, right? I mean, I know you're saying that if it's a civil litigation, then it can form the basis for a malicious prosecution claim if it's functionally identical to a criminal prosecution. But here, it seems like it's functionally equivalent to a criminal prosecution. He is arrested. He's extradited to a different state. And he is incarcerated for 104 days. How can you do that in a civil case? It's not that you can do that in a civil case, Your Honor. It's that neither civil litigation nor what happened here is a criminal prosecution. So just to outline the flow of the argument, we think it's clear that, you know, at common law in 1871 and when 1983 was enacted, the great majority of cases required a criminal prosecution in order to pursue a malicious prosecution tort claim. We don't think probation revocation is a criminal prosecution. Gervin responded that he thinks some cases historically allowed malicious prosecution claims for civil litigation as well. Our point is just that what Gervin calls civil litigation is actually what we would call criminal litigation. Because at the time, most criminal prosecutions were brought by individuals as well, but they still had criminal consequences. The difference between probation revocation and criminal litigation is that, yes, if you revoke someone's probation, they can go back to being incarcerated. But that's not new criminal punishment. It's not, you know, new damage to their reputation. It's not something that they didn't have the full benefit of a criminal trial before to ward off. This is something they had the full due process protections of a criminal trial. They're already serving a criminal sentence. But see, that's where you're losing me, right? Because in order to be able to arrest the person again while they're on probation, you have to show probable cause that there was a violation. Would you agree with me on that? Yes, I do. Okay. So you have to show probable cause. And the court has to sign off on an order authorizing the arrest, right? Correct. Okay. You can't do any of those things. You can't arrest the person. You can't revoke his probation. You can't drag him into court. You can't transfer him to a different State, extradite him to a different State. You can't do any of those things unless there's probable cause, right? And that's a requirement of the Fourth Amendment. I agree with you. I do not think that we're out on a limb here saying that probation revocation is not a criminal prosecution. This court and the Supreme Court and other federal courts have said that across the board in a number of cases. In the case of due process protections, in the case of speedy trial rights, in the case of the right to counsel, when it comes to evidentiary burdens, the court has repeatedly emphasized that there are important differences between prosecution and revoking probation or revoking parole that make those things not a criminal probation. But I think that gets us over to the qualified immunity point. Well, on that point, I think, you know, you've got a strong argument that the weight of authority supports that position. But when you look at the text of the Constitution itself, it says a warrant shall not issue without probable cause. It doesn't say anything about pretrial proceedings. It doesn't say anything about post-trial proceedings. If we don't look at these cases that you cite and we just looked at the text of the Constitution itself, strictly construing the Constitution, all it says is a warrant shall not issue except based on probable cause. Well, that's exactly right, Your Honor. And, again, I think that brings us back to the final point that I'll reiterate on the merits, which is just that that's true. The Fourth Amendment applies any time a warrant is issued without probable cause, which is why he can pursue non-damages remedies like a habeas writ, for example, or any kind of injunctive relief would probably apply here. He could pursue that just by showing the Fourth Amendment violation. But because 1983 was enacted against the background of the common law at the time, in order to recover damages, which is what a tort action is, the plaintiff also has to show the common law elements. Well, no, in Williams, this Court has already determined that those common law principles serve as a guide, but they are not necessarily determinative of the outcome. So there's that. And then also I would like you to revisit your statement of what our circuit's law is, because I have before me Smith v. Mitchell, a 2021 case, in which the Court reasoned that that actually, whether probation, a probation violation is a criminal prosecution for purposes of Section 1983, is actually, might still be an open question. So what case are you citing for the proposition that our Court has already decided that that's, please answer that. And then the second thing is the reliance on common law in light of Williams. So I might go over time if that's OK with the answer, Your Honor. So, yeah, so two questions there. Just to answer Smith v. Mitchell briefly. Smith v. Mitchell, you know, it has two paragraphs toward the end of the opinion. One, it acknowledges we have not specifically addressed whether probation violation is a criminal prosecution for 1983 purposes. And on that, just to get back to the qualified immunity point quickly, I think that is pretty conclusive on the qualified immunity point that the Court itself has acknowledged. It's at the very least an open question. But then in the last paragraph of Mitchell, it answers that question. And, again, this is an unpublished case, so it's not binding on the score, but I do think it's dispositive on the qualified immunity question. It says, Smith's claim accrued on the date of his arrest because a probation revocation hearing is not a criminal prosecution for the purposes of a malicious prosecution claim. So Smith said the question's open, and then it answered it. No, in an unpublished opinion. So do you have a published opinion for Mark's circuit? No, I didn't. OK. I just wanted to clarify that. So can you answer the question related to the common law and how Williams applies? Yes, so I think Williams—so what is clear is that 1983 is enacted against the background of the common law. So common law, Supreme Court, this Court have repeatedly said, and Williams and other cases, the common law is the starting point, and you have to have a good reason to depart from it because Congress enacted 1983 against the background of the common law. This Court, when it's articulated, what it has said are the common law principles that it does want to incorporate into the 1983 malicious prosecution claim. The sort of core ones that it's always said is it has to not have probable cause, and that's where, as Williams and Luke and some other cases explain, that's where it overlaps with the Fourth Amendment. In addition to those things, the plaintiff has to prove criminal prosecution, and Williams, Luke, recently in Butler, which is a case we cite in our brief, this Court has always described the proceeding requirement as a criminal prosecution. And then, of course, you have the other requirements. It has to terminate in the plaintiff's favor, has to have injured the plaintiff, and then it has to have been instigated by the defendants. So those are the requirements this Court has always articulated. It's never disturbed those. Yes, the Court has acknowledged that these are just a guide, and they can be departed from where the Fourth Amendment requires departing from it, but I guess I'd have two responses to that. One is as a general point, even though this Court can depart from it, it's not an invitation to either reinvent the wheel just to ensure that the plaintiff's claim succeeds or to abandon elements for that reason. So, for example, I think it was in Lasker this Court talked about how it wanted to incorporate the favorable termination requirement from the common law, and ultimately the Court concluded that the common law requirement did just agree with the Fourth Amendment. But it said if it didn't, we might adjust that requirement a little bit to say it doesn't have to be a declaration of innocence, just something not inconsistent with innocence. But it didn't say we're just going to get rid of the favorable termination requirement. And here what I think Girvin is asking for is just to entirely get rid of the criminal prosecution requirement. All right. We have your argument. Mr. Draper, you've reserved some time for rebuttal. We'll hear from Mr. Greenemeyer. Good morning, and may it please the Court. I want to thank Cato for dividing argument with us, as well as NPAP for their amicus support. The government cannot lie to put you in jail. Because that has always been the rule and must always be the rule, we ask this Court to reform. There are two aspects of that rule that we would like to address. First, the substantive law, and second, the claim for qualified immunity. I'm sorry, before you do that, can you speak to the issue that your colleague on the other side has raised, specifically that with respect to the common law aspect of a malicious prosecution claim, that this is not a criminal prosecution, and therefore that it's impossible for you to be able to go forward on this case. Defendant's argument on this point is an argument in favor of absolute immunity, so long as a warrant application alleges a nexus to probation, whether the person is on probation or not. And that's built upon the thinnest of reeds. This is highlighting one element of one part of the common law, and it's just wrong. There are five reasons that we've identified. First, the language that they cite in their case, their first articulation of this common law element, is instituted or continued a criminal prosecution. So to the extent, I mean, this Court's precedence is pretty clear that a warrant initiates criminal prosecution. It says it in Williams and in Whiting. But to the extent that we're wrong about that, you don't buy our argument on that, it's certainly a continuation. So I'm guessing, I don't know, and we'll hear from them, I'm sure, about this, but I'm guessing what they'll say is continue to prosecution has to mean before the sentence is imposed. And we would say that this changes, it's a resentencing. Right? This person, Mr. Gerben, was sentenced to one year in custody and nine years at liberty with no restrictions whatsoever. And he was, you know, what they were trying to do, what the state was trying to do, was resentence him to a longer period of custody. So that's the first reason. Well, the Fourth Amendment, I mean, what these Supreme Court cases say is the Fourth Amendment, I mean, it really addresses only pretrial deprivations of liberty. And this is Supreme Court authority. Albright v. Oliver, Emanuel v. the City of Joliet, the Fourth Amendment applies to pretrial and not post-trial proceedings. The Supreme Court has made that pretty clear. So in, you know, So you don't have Fourth Amendment rights post-trial. You only have Fourth Amendment rights pretrial. And I might not agree with that, but the Supreme Court has made that crystal clear. So to the claim for unlawful seizure, below and on appeal, the Court and the parties agree that this was a Fourth Amendment claim, right? That's how we litigated it. And that's what I think the proper home is. And there is, like, especially Well, you can agree with it if you want. But if the Supreme Court says the Fourth Amendment addresses pretrial deprivations of liberty, aren't we bound by it? I mean, they've said it multiple times. Aren't we bound by that precedent? So I think this may fit in a in-between space. But I do think that the most natural home, like if you look at Wallace v. Cato, right? It says if there's a closer analog than the 14th Amendment, which we think is the Fourth Amendment, then you go with the Fourth Amendment. And I think that's where we're at because this is a warrant. And because it's a warrant, it's the Fourth Amendment. But we did argue below that in the alternative, if we're wrong about that, we're bringing a 14th Amendment claim or an Eighth Amendment claim. Yeah, see, I might agree with you. But in order to accept your argument, we would have to say that the Supreme Court got it wrong. That's the problem that I have here with your argument. We'd have to say the Supreme Court got it wrong, and we can't do that. Respectfully, I don't think that's the case. And going back to the question about the common law, the phrasing of the common law element from the Supreme Court in the most recent term is suit or proceeding from Thompson v. Clark instead of initiation or continuation of a criminal prosecution. So regardless of what this is, it's certainly a proceeding of some variety. And it was initiated. And I think it was initiated with a warrant. So I think the most natural home is the Fourth Amendment. Well, if the Sixth Amendment right to counsel doesn't apply to probation revocation, right, you have no right to a lawyer for a probation revocation proceeding. That's not right. That's not right? So in Morrissey and Gagnon, a parole and then a probation cases from 1972 and 1973, they said sometimes you will need a counsel in those cases. You got a case that says you have a right to counsel for a probation revocation? I don't know the right on rule case, but they say in certain circumstances you will need counsel. And what I think is important as well that comes from those cases, Morrissey and Gagnon, is they say that you need probable cause plus a judicial hearing in order to seize someone at the front end for an alleged violation. And that's lacking here. There's no probable cause and there's no… What do we do with Gagnon v. Scarpelli, a 1973 Supreme Court case? Probation revocation, like parole revocation, is not a stage of a criminal prosecution. So if it's not a stage of a criminal prosecution, then I think it's certainly a suitor proceeding using the language from Thompson v. Clark. And if it's not a stage of the criminal prosecution, then we don't need to… I think that puts us more comfortably in the Fourth Amendment bucket because we're starting a new process, right? And again, the language that we like to emphasize from those two cases is that you certainly, even in a probation or parole context, you need probable cause and an independent judicial determination or an independent determination that there is probable cause before you can seize someone. And here, that seizure went wrong because it's based exclusively on… Now, Gerben does have other remedies, doesn't he? He can file a petition for writ of habeas corpus or a 1983 claim based on false imprisonment rather than malicious prosecution. So he's got other remedies, right? So we have pleaded a claim under the Fourth, Fourteenth, and Eighth Amendments given the uncertainty here. And whatever the source of the rule or authority is, there is a rule of law that the defendants agreed to in their deposition is that you cannot lie to put someone in custody. And so whatever the source of that rule is, the qualified immunity question, to turn to qualified immunity briefly, is based on conduct. And every law enforcement officer in the state of Georgia, in the country, and every American would know that the government cannot lie to put you in custody. Whether the source of that right comes from the Fourth Amendment, from the Fourteenth Amendment, that right is unquestionably there and concededly there. I guess my question is, and obviously it's a litigation strategy, but why rest his claim on the Fourth Amendment, which seems to be the weakest vehicle, as opposed to relying more heavily on the other claims? I mean, I think and what I'm hearing and I hope I'm hearing from the state is at least an acknowledgement that what happened to Mr. Gerben in this situation was wrong. And so as long as there is some relief that is available, why does it have to be the Fourth Amendment? What does enshrining this right within the Fourth Amendment get you that those other avenues for remedy do not? So, again, below we pleaded a claim for relief under the Fourth, Fourteenth, and Eighth Amendments. And we responded to the state's motion for summary judgment, which argued it solely as a Fourth Amendment claim. And in our response to it, we highlighted that they didn't address the Fourteenth Amendment or the Eighth Amendment claim. If there's any underdevelopment there, that's the reason. Again, I really think based on the authority that we've presented, as well as the state's concessions and the district court's work, that the natural home for this is the Fourth Amendment. But if we're wrong about that, we would certainly appreciate some guidance about where the proper home is so that we can litigate that on remand. So I want to just very briefly touch on the framework for looking at the common law elements versus the Fourth Amendment core. And I would direct this Court's attention to Blue v. Lopez, and obviously Williams v. Aguirre, and Laska v. Hart, which adopt this two-step framework, where first they look at the elements, and then they look at whether those elements comply with the core of the Fourth Amendment and the broad remedial purpose of 1983. All right. Thank you, counsel. And, Mr. Cavidan, on behalf of the Cato Institute. If I could just have a moment to elevate my wheelchair. Take your time. Thank you very much. Your Honors, may it please the Court. Cato's focus here was on the 19th century status of the common law. I know we've already talked about that some today, but I just want to reinforce a few points. Mr. Draper said that the great majority of cases in the 19th century required criminal consequences, but, Your Honors, arrest was identified as one of those consequences. And we have case law from debtor suits, where, in fact, Georgia itself imposed limits on imprisonment under the state constitution. Guardianship cases, as well as even cases that were settled civilly, all of which resulted in arrests, which did give rise to malicious prosecution claims. The question was whether or not property was attached or a person was seized. And Mr. Draper's brief actually acknowledges this more than his arguments today have so far. He says there was no sharply cut division between civil and criminal cases in the common law, that many civil actions were functionally criminal prosecutions, and that individuals could be liable for malicious prosecution because they could cause a defendant to be indicted or arrested. That's exactly what happened here. The state's own brief says it's not surprising that such cases of common law gave rise to malicious prosecution claims. We agree. The state goes on to confirm that damages were available only if the plaintiffs were arrested or if property was attached. Again, we agree. And that was the emphasis of our brief. Your Honors, the state goes on to argue, though, that revocation proceedings have lower stakes than criminal or civil proceedings. That's absolutely not the case for Mr. Gervin. So how do you reconcile the historical common law with the statements of the Supreme Court? I think we look to the Supreme Court's most recent statement on this, which is Thompson v. Clark. And as Mr. Greenemeier said, that court identified three elements that were required for malicious prosecution, said these are elements that align with those that existed in 1871. The first is that the suit or proceeding had to lack probable cause. And that's really the focus of our briefing today, certainly from Cato, as well as a lot of what the argument has been today is, can a probation revocation proceeding qualify as a proceeding for purposes of that first fraud? We believe it's very clear that it can, especially because the court invited courts to look through the state of the law in 1871 when Section 1983 was enacted. Here we're looking at the same kinds of consequences that, over and over again, courts throughout the country held could give rise to malicious prosecution. And that was true, again, whether it initiated as a commercial dispute, whether it was a debt collection attempt, whether it was an attempt to have somebody declared incompetent and institutionalized. All of those are settings where malicious prosecution claims did arise. And the key was arrest. If there was an arrest, then there could be a malicious prosecution claim. That was the criminal-style consequence that courts looked for, that or seizure of property. But what about the more specific statements of the Supreme Court with respect to whether probation violation proceedings are criminal in nature? It depends on the context. The Supreme Court's holdings characterizing probation revocations as criminal for some purposes doesn't mean that it's so for all purposes. And this court noted that in noting that it was still an open question whether or not probation revocations are criminal or civil in the unpublished opinion that was discussed just a few minutes ago. The Supreme Court has said that for certain purposes it can qualify as criminal. But nevertheless, or it's not necessarily criminal, but that's not the hinge question going back to the common law, and it's not the hinge question for purposes of a 1983 suit alleging malicious prosecution. Is there a difference between, like in Gagnon, I guess it was decided in the context of the due process clause as opposed to the Fourth Amendment. Does that make a difference? They have different histories. Section 1983 has a different history. Section 1983 was meant to establish a baseline of protections based on common law. The Supreme Court has said most recently that malicious prosecution today, what we do is, according to Thompson v. Clark, look at malicious prosecution in 1871. If somebody in a civil or criminal case swore a complaint that resulted in somebody being arrested and held for 104 days without probable cause, they would have been liable in 1871. So for purposes of malicious prosecution under 1983, we believe that that's the best guidance, that that's the guidance the court has asked courts to look to, and that's what we follow today. So with that, I see my time is up unless there are any further questions. All right. Thank you, counsel. Thank you very much. And Mr. Draper, you've reserved some time for rebuttal. Well, thank you, Your Honor. I guess I'll start by responding to a few things that have been raised. I think my return to the qualified immunity point, I guess, first, because the other side has relied so heavily on the Thompson quote, I do want to point out that they're correct. But, you know, they identify the one element as a suit or proceeding. But in the paragraph immediately before that, they describe what kind of suit or proceeding they're talking about. They say in American courts as of 1871, the malicious prosecution tort generally allowed recovery against an individual who had initiated or caused the initiation of criminal proceedings. And I don't take Cato or Girvin to be contesting that generally in 1871, the malicious prosecution tort required a criminal prosecution. They just say that whatever criminal prosecution meant, probation revocations today must meet that standard. But, again, I don't think they have a good response to all of the cases Your Honors mentioned that repeatedly say probation revocations are not exactly the same as criminal prosecutions. But let me ask you a question about that. I mean, it seems like, for example, as I was asking about just a moment ago, that like in Gagnon, it was decided in the context or it was stated in the context of an analysis under the due process clause, which obviously is a different analysis than we would be talking about when we're talking about the right here. So the Fourth Amendment. So I don't know if you want to address that. Why is that not significant? So my response is that I think that it would be one thing if, you know, the Supreme Court had only addressed that or Federal courts had only said this in the context of due process. But they've said it across the board, due process, speedy trial, right to counsel, evidentiary burdens. And the through line to all of those has been the consistent logic that probation revocations are not criminal prosecutions. And I think that's just as true. The interests are just as different in the Fourth Amendment context or you might think they're different because the liberty of the Fourth Amendment is concerned about personal liberty, liberty of movement, right? And liberty of your person search and seizures. You might think that, you know, a probationer has some Fourth Amendment interest, some liberty interest. They do. This is why they why the state does have to have probable cause for an arrest warrant for a probationer. But you might also think they're not nearly as significant for a probationer as they are for somebody who hasn't been convicted of a crime. Because a probationer has been convicted of a crime, is already serving a criminal sentence. I think the Supreme Court, I apologize I'm somewhat blank on the name, but I believe it's the Knight case, we do cite it in our briefing, has said that the probationers and parolees are less protected by the Fourth Amendment's protection against unreasonable searches than a free person is. So the Supreme Court has already hinted that this is true in the Fourth Amendment context. That's true. But, I mean, it seems like there's something different about, you know, the context that we have here where there's an allegation that the officers lied in order to obtain probable cause. And there really was no, I mean, everybody's in agreement. There was no violation, right? I mean. Yeah, I think that's why it's clear there was no probable cause here. So Gervin might be very easily able to meet the Fourth Amendment requirement, which is why it would be very easy for him to be released after they've arrested him. You know, as soon as he had his revocation hearing, it was a pretty short hearing if you look at the transcript, the judge said, look, I don't see any evidence. But at that point, I mean, he had been arrested. He was extradited from a different state. And then, I mean, you know, forced to travel. We all know how that goes. That could take weeks. They stop at every local jail on the way. They pick up everybody on the way. And then he was in custody for 104 days. And so there's something that's just not, you know. I don't deny that there was something unfortunate or wrong happened here. And I think, you know, Judge Abuda, your points earlier were correct on that. But I think, you know, one, that's why there are some protections in place. He's not totally without protections, as Judge Wilson noted. You know, he does have other remedies. It's just that he can't recover damages. And one of the reasons he can't recover damages is because probation is different. Probation is supposed to be, you know, a flexible process, as this court has noted. It's something that, you know, criminal defendants or criminal convicts are not entitled to in the first place. And if I could just, you know, reiterate the basic UI point that I think. No, I hear what you're saying. I mean, 104 days is an awfully long time before you can get your remedy that you're talking about, right? I mean, if he had filed a habeas claim, we all know that would still be pending. So I'm not sure, as a practical matter, I think what you're telling me as a practical matter is, well, he just has to wait the 104 days, and that's what his relief is. He has to wait some time until he's given, you know, a hearing. Well, what could he have done to have gotten out earlier here? Well, I think one thing to understand is the system worked in some very important sense here because he got his hearing to test the problem. Okay. Not my question. And if he's not given that, if he's not given what he's entitled to, it doesn't matter. Okay. What if it takes a year and a half? What if it takes a year and a half for him to get his hearing? He's just transferred all over the place. It takes a while for him to get back. If the State is, you know, playing games, that might itself be evidence they're violating due process concerns. But the important thing to understand is I think on that front, on the question of whether he can just get an order requiring his release, that's no different from just a generic criminal prosecution. So what I hear you saying is there's, as a practical matter, there's nothing he can do, there is nothing he could have done here to get out earlier than 104 days after he was arrested. That's true. I don't know. But I don't think that's any different from just a generic criminal prosecution on that front. But I also think, you know, we have to remember we're writing a rule for every case. We're not just writing a rule for this particular and admittedly egregious case. So we have to think about all the cases where, you know, a probationer is subject to very scrutinizing conditions and probation officers do have a lot more flexibility to bring people in. And you might not want all of them. No flexibility to lie to support a warrant. In other cases where you can imagine if, you know, if a probation officer, if somebody is subject to a lot of very scrutinizing probation conditions, a probation officer thinks the person's violated and, you know, they bring a probation revocation petition, but it turns out they were wrong and they just didn't check the conditions closely enough. They didn't lie, but they didn't check the conditions closely enough. Is that something we want, you know, probation officers all of a sudden to be personally financially liable for? And there are good reasons to think no. One very important reason is that this is all a discretionary, you know, matter of grace from the state to begin with. Well, the qualified immunity analysis gets you there, right? If they didn't, if it was unintentional, good faith basis for issuing the warrant, then the officers would get relief down the road. But that's very different from someone who was incarcerated because of a false statement, incorrect statement, I'm calling it a lie. I think that's a very different scenario, and there does need to be some avenue for addressing that. Right. I agree. I think qualified immunity does do a lot of work here and at least requires a decision in the defendant's favor in this case. One, because of all of the cases where the courts have said it's not a criminal prosecution. But then also, you know, probation officers are just very used to, you know, treating probationers very differently than they would a criminal defendant, and that's very much the norm. But I agree. You know, I think the Fourth Amendment does a lot of work here saying you can't just arrest people based on false statements. That's a different question from when they're entitled to damages. The court's been clear. Damages turns on the common law towards the common law. How soon after his arrest did he appear before a judicial officer? I believe he was arrested, I think it was in April of 2019. He was arrested in North Carolina. You know, they got him on a traverse stop incidentally. They saw the arrest warrant had been out for him. The arrest warrant had been issued back in 2012. And then it was 104 days after that, after his seizure in North Carolina. So I'm not sure how much time elapsed. I don't know if it's in the record from when he was arrested in North Carolina to when he got to Georgia. My best understanding of the record is it wasn't until July because that's when the replication petition was prepared. And then very shortly in early August, I want to say August 4th of 2019, that's when the hearing happened. Thank you, counsel. Court is adjourned.